~ JAMES A. BURCH et ux. *v.* JOHN P. STOVALL et al.

Where H. requested a person to prepare a written will for her, stating at the time what disposition she desired to make of her property, but the will not being prepared as soon as expected, H. believing that she had but a short time to live, called witnesses to her bedside, when' she said: " that she gave, willed, and bequeathed unto her daughter, M. B., a certain slave S.;" or words to the like effect. And further, " that after the payment of her just debts, she willed and bequeathed that the remainder of her property, both real and personal, should be equally divided, share and share alike, between her children;" or words to the like effect:— *Held*, that this was a valid nuncupative will under the statute.

The statute does not require the witnesses in such a case to prove the presence of each other at the time the words were uttered; as it is sufficient if proved by two witnesses that a person was called on to take notice, or bear testimony that such was the party's intention, or words of like import.

ON appeal from the probate court of Noxubee county; Hon. Reuben Ruff, judge of the probate court of Noxubee county.

The opinion of the court contains a sufficient statement of the facts of the case.

*Foote* and *Desmukes* for appellants.

To establish the will recited in the petition, it is necessary to prove, by two witnesses, that the testatrix, Mrs. Hinkle, called on some person present to take notice or bear testimony, that such is her will, or words of like import. Hutch. Dig. 650, § 18, 19, 20.

Although it has been decided that it is not necessary in creating a valid nuncupative will, that witnesses should be present at the same time, yet the proof shows that the two witnesses were both present at the same time and place, and heard the same conversation and the same remarks of the deceased as to how she wished her property to be disposed of. *Portword* v. *Hunter*, 6 B. Monroe, R. 538; 8 U. S. Dig. 372, § 27; *Dewey* v. *Dewey*, 1 Metc. R. 349. If the witnesses do not agree as to all the bequests, the will can only be established so far as they do agree. *Hare* v. *Bryant*, 2 Port. Dig. 519. But

61 *

the proof shows that the witnesses, Mrs. Morgan and Mrs. Hinkle, do agree in every particular, and testify to the same bequests. In the case of a written will, it is now almost universally recognized that it is not necessary that all the witnesses should sign at the same time or in the presence of each other; and as the statute is silent in the case of nuncupative wills, as to whether both witnesses should be present at the same time, there are much stronger reasons why a liberal construction should be given to it. The person dying *in extremis* is presumed incapable of procuring the attendance of witnesses; not having time to make a written will, the party, pressed by the near approach of death, makes the verbal will before such persons as may by accident be present at the time. James Gilmore testifies that she instructed him to write a will of the very same character, and with the same bequests, as is set forth in the nuncupative will. That he was called off on business, intending to return in time to write it; but that he returned too late to do so. The deceased, just before her death, expressed her fears that he would not get back in time to write it, and called her sister, Mrs. Morgan, to her bedside, and stated, in the hearing and in the presence of Mrs. Gilmore, how she wished her property disposed of, to wit: that she wished her daughter, Mrs. Burch, to have the girl Sylvia, and the balance of her property to be divided equally amongst all of her children. Both of the witnesses testify to the truth of the facts set forth in the nuncupative will sought to be established. Whether she called upon them or not and said that such was her will, it makes no difference. She used words of like import; this is clearly proven, and beyond doubt establishes the *animus testandi*.

But it is insisted that the deceased should have called upon some person in the presence of the two witnesses. That there should be a third person present upon whom call should be made, and that this third person is wanting in the proof. "The statute does not require the testator, if he may be so styled, to call upon the two witnesses to take notice that such is his will, nor to call upon them to witness that he calls upon some person present to take notice that such is his will." *Parkerson* v.

*Parkerson,* 12 S. & M. 678; *Parson* v. *Parson,* Greenl. 298; 3 U. S. Dig. 672, § 64. The statute must be liberally construed; if it had intended that one of the two witnesses could not be the same person called upon, and there must actually be a third person, why was it not so expressed? What office would a third person fill to be called on, &c.? He does not speak. He does not act. But is a mere automaton at the time. But it is clear that the legislature never contemplated such a construction of the statute. We insist that the statute was strictly complied with. The testatrix *in extremis* called upon Mrs. Morgan, in the hearing and presence of Mrs. Gilmore, and stated the disposition she wished made of her property after her death, in substance stated her will, or words of the like import. Here, then, we have proof that some person was called on; and this is established by two competent witnesses, who both establish the will sought to be probated. This constitutes the *rogatio testium*; the *factum* of the case.

All the witnesses testify alike as to the *animo testandi;* her deliberate and fixed purpose, for several days before her death, to make the very will which is now sought to be established as a good nuncupation. 1 Williams' Ex's, 58; Stat. of Charles II. Caroline and Ann; 4 Kent, 517; *Prince* v. *Hazleton,* 20 Johns. 517. Neither the English nor the New York and Pennsylvania decisions can be invoked in the determination of this cause, their statutes being different from ours. But the Kentucky statute is substantially the same as that of this State. A rational and liberal construction will be given to the statute, and the proof of the will being so full and complete, we think the decree of the probate court ought to be set aside, and the will ordered to be probated.

*H. L. Jarnagin* for appellees.

Under the proof offered to sustain the paper presented as the nuncupative will of Mrs. Hinkle, the probate court properly refused to admit the same to record. The proof being entirely insufficient under the statute of this State. H. & H. 387.

There is no proof that any person was called to take notice that the disposition then made was her will. The proof falls far

short of the requirements of the statute. *Gorner* v. *Luniford et al.*, 12 S. & M. 558; *Parkerson et al.* v. *Parkerson*, S. & M. 672; and the authorities referred to in the opinions of the court.

Both witnesses must be present at the same time and hear the same declarations. 10 Yerg. 501; 3 Leigh, 140; Chilter's Prob. Court Law and Practice, 57, and the authorities there cited.

Mr. Justice FISHER delivered the opinion of the court.

This was an application by the appellants to the probate court of Noxubee county, to prove and admit to probate what is alleged to be the nuncupative will of one Mary Hinkle, deceased, late of said county.

The testamentary words uttered by the deceased, and as reduced to writing a few days after her death, are as follows, to wit: That, at her residence in said county, during her last illness, the deceased called upon two ladies, who were examined as witnesses in court, to bear testimony, or take notice, or words of like import, "that she gave, willed, and bequeathed unto her daughter Martha Burch, wife of James A. Burch, a certain slave, Sylvia by name, or words to the like effect;" and, 2. "That after the payment of all of her just debts, she willed and bequeathed that the remainder of her property, both real and personal, should be equally divided, share and share alike, between her children, or words to the like effect."

Not a doubt can exist as to the intention of the deceased to make the above testamentary disposition of her estate. The only question for consideration is, whether in performing this act, she conformed substantially to the provision of the statute on the subject. To show, however, that the testatrix must have supposed at the time that she was performing a testamentary act, we will notice briefly the testimony. James H. Gilmore proves that on Tuesday, about the 1st of March, 1853, while at the house of the deceased, he was requested by her to write her will as above set forth; that he told her he would have to return home first, and that he would return again on Friday evening or Saturday morning following, and bring with him the will. He proves, that returning on Saturday morning with the will,

he found the deceased dead.   Mrs. Gilmore next proves that the deceased repeatedly, during the week, expressed as her will, that her daughter Martha should have the slave Sylvia, in addition to an equal share with the other children of deceased's property; and that she would not die content if this arrangement was not made, assigning as a reason, that Martha had not had equal advantages with the other children in obtaining an education.   These circumstances appropriately precede the main proof in the cause, which will now be noticed.

On Friday of the week named, the deceased becoming apprehensive that she would not survive till the next morning, the time appointed by Gilmore to return with the will written for execution, called a Mrs. Morgan to her bedside, when, in the language of the witness, " deceased told witness that she had asked James Gilmore to write her will before that, and that he had put her off, and that she was fearful that she would not live till morning if she had another of her bad spasms." Deceased said further, that she willed, or had willed, (she did not recollect which,) the negro girl Sylvia to Mrs. Burch, and an equal division of the rest of her property with the other children.   The witness further states that when she approached the bed, the deceased requested her to lay her head down, that she wished to talk with her, and immediately uttered the words as stated relative to her will.   Mrs. Gilmore, who proves that she was present at the time, says that the deceased said also to Mrs. Morgan that she wished her to see that Martha got the girl Sylvia.   Both witnesses concur as to words uttered as testamentary by the deceased, and as to the circumstances under which they were uttered.

Without further stating the testimony, it will be sufficient to say, that in our opinion it clearly establishes the legal execution of the will.   It is true that no person was called on in so many words to take notice or bear testimony, that such was the last will and testament of the deceased; but words of like import were certainly employed, or if not words of the same meaning, the circumstances under which they were spoken, and surrounding the transaction, impress upon the same legal effect.

Mrs. Morgan is called from the "fireplace" to the bed of the deceased, for no other purpose but to hear these words spoken. When the witness was requested to lay her head by the deceased, and listen to what was to be said to her, it was equivalent to saying, "I wish you to take notice or bear testimony that I uttered these words, or made this disposition of my property."

The party believed that she had but a few hours longer to live. She had despaired of executing a written will. The subject weighed upon her mind, and she was convinced that she must act, and act promptly, and in a manner that would be remembered and respected after her death. The person with whom she conversed, and the persons in whose presence she conversed, could not fail to be also thus impressed, because the reasons for desiring and holding the conversation were at the time given; the consciousness that dissolution was rapidly approaching, and the certain belief that the written will could not be executed before death overtook the party. The testatrix who spoke, no less than the persons who listened, understood alike the object and design of the conversation, that it related to a matter which was to be by them remembered and detailed after her death.

Being satisfied on this point, we notice the only remaining point in the cause.

Both witnesses, Mrs. Gilmore and Mrs. Morgan, prove the testamentary words; but the latter fails to prove, except by inference, that Mrs. Gilmore was present when the words were spoken. She, however, proves that she was present, and heard every word said to Mrs. Morgan. The statute does not require the witnesses to prove the presence of each other at the time the words were uttered. It is sufficient, if proved by two witnesses, that a person was called on to take notice or bear testimony, that such was the party's will, or words of like import. Mrs. Morgan, as we have shown, proves that she was thus called on. Here is the proof of one witness of this fact. Mrs. Gilmore makes, in substance, the same proof. Here, then, the proof is made complete. Two witnesses concur that a person

was in a legal sense called on to take notice or bear testimony, that certain words constituted the will of the deceased.· Hutch. Co. 650.

We deem it unnecessary further to elaborate this point, being satisfied that the will ought to be established. The decree of the court below is reversed, and cause remanded. ·

Decree reversed.