SYLVESTER SEEVER ET AL. V. WARREN SEEVER, ADMR., ET AL.

1. STATUTES REGARDING NUNCUPATIVE WILLS MUST BE STRICTLY CONSTRUED.

The provisions of the statute in regard to nuncupative wills must be strictly observed. The language used by the deceased must be strictly construed to establish nuncupation.

2. WHAT IS NECESSARY TO CONSTITUTE A NUNCUPATIVE WILL IN OHIO.

To constitute a nuncupative will in Ohio it must be proved that a testator called upon some person present, at the time the testamentary words were spoken, to bear testimony to said disposition as his will, as provided by statute.

MOTION for a new trial.

On the night of the 29th day of January, 1881, Hiram H. Seever was run over and mangled by a train of cars near the B. & O. railroad depot in the city of Tiffin. In his wounded condition he was found lying on the railroad track, and was at once carried into the depot, where a number of persons—all strangers to him—surrounded him. A physician was then called, who, after making an examination of his wounds, said to Seever: "Your time is short. If you have any word to leave you had better say it now." Seever then uttered these words: "I was to be married next Thursday. Tell my folks to give Martha Jane Wade, my intended, one thousand dollars of my money." Nothing more was said either by Seever or those around him, and in about fifteen minutes afterwards he died.

Afterwards, on the 31st day of January, 1881, the following paper writing was made and executed, and was admitted to probate by the probate court of Seneca county, as the last will of said Hiram H. Seever, deceased:

"THE STATE OF OHIO, SENECA COUNTY, ss:

"Personally came before me, J. F. Bunn, Probate Judge within and for said county and state, Patrick Sweeney, James Hennessey and Richard Desport, who being first duly sworn, say, that Hiram H. Seever, who died suddenly in the night of the 29th day of January, A. D. 1881, from injuries received by accident, at the B. & O. R. R. depot, in the city of Tiffin, in this county, did, during his last sickness and just before his death, use the following language in respect to the disposition of his property, to-wit:   'I was to be married next Thursday.   Tell my folks to give Martha Jane Wade—my intended wife—one thousand dollars of my money.'

"That the said Hiram H. Seever did, during the last hour of his life, in the presence and hearing of affiants, repeat a number of times the above language in substance, intending thereby, as affiants believe, to give to said Martha Jane Wade, one thousand dollars of his property.   And affiant further says that the said Hiram H. Seever, at the time of using said language, was of sound mind and memory, and not under any restraint, and that he called upon the persons present at the time said testamentary words were spoken to bear witness to said disposition as his will.

"RICHARD DESPORT,
"JAMES HENNESSEY,
"PAT. SWEENEY.

"Sworn to and subscribed in my presence, this 31st day of January, A. D. 1881.

"J. F. BUNN,
"Probate Judge."

This action is brought by the plaintiffs to contest the validity of said alleged will.

On the trial to a jury at the present term of this court it was proved, by the testimony of the subscribing witnesses to said alleged will, and by the attending physician, that the said Hiram H. Seever, when he uttered said alleged testamentary words, did not address himself to any one person in particular; that he did not call upon any one present to bear witness to said alleged disposition as his will, and that no other words were spoken by said Seever other than those quoted in said alleged will; and said subscribing witnesses also testified that when said paper-writing was made and admitted to probate they did not say to the probate judge that said Hiram H. Seever called upon the persons to bear witness to said disposition as his will.

The jury returned a verdict sustaining the will, and thereupon the plaintiffs filed their motion to set aside said verdict. and for a new trial, and the same was argued by counsel.

MOORE, J.

The sole question to be determined is whether the facts proven constitute a testamentary bequest, under the statute relating to nuncupative wills.

Section 5991, provides, "A verbal will, made in the last sickness, shall be valid in respect to personal estate, if reduced to writing and submitted by two competent disinterested witnesses within ten days after the speaking of the testamentary words, and if it be proved by said witnesses that the testator was of sound mind and memory, and not under any restraint, and called upon some person present, at the time the testamentary words were spoken, to bear witness to said disposition as his will."

(1.)   The words, "I was to be married next Thursday.   Tell my folks to give Martha Jane Wade $1,000 of my money," do not of themselves constitute a testamentary bequest, and if the words appearing in the statement or affidavit of the witnesses, that at the time the words were spoken the testator called. upon the persons present to bear witness to said disposition as his will, were

32  C. C.    1

not actually used, no probate of the will could have been had. The words themselves are nothing more than a direction or request for somebody, called by him "his folks," to give something it does not appear they had or could control, $1,000 of the money of the alleged testator. Not that there should be paid from his estate $1,000, or be paid by any one in whom the estate would vest as his personal representative, $1,000; so that from the words spoken no testamentary bequest can arise.

There is nothing in the words used from which it can at all be inferred that Hiram H. Seever intended them to be his last will; nothing more than that his folks should give to Martha Jane Wade $1,000 of his property. It was optional with them to give or not from his estate.

(2.) As it is only in the statement made and which was probated, that Hiram H. Seever called upon the persons present to bear witness to what he said relative to the disposition of his property as his· will, can it be concluded that he either made or intended to make a testamentary bequest? The words, "That he called upon the persons present, at the time said testamentary words were spoken, to bear witness to said disposition as his will," are not proven to have been used or spoken; but on the contrary it is established and not contradicted, that neither the language, nor the substance of it in any form was expressed by the alleged testator.

It is claimed that a less degree of certainty of expression may be used in a verbal than a written will, and hence that, while the expression used could not operate to pass the property, if incorporated in a written will, it is sufficient in an unwritten will.

Redfield in his Treatise on Wills says: "The provisions of the statute in regard to nuncupative wills have been strictly enforced by the courts, and they have generally adopted a rigid and strict construction in regard to them." Mr. Chitty, in his note, 2 Blackstone, 501, says, that independent of the statute of frauds, the factum of a nuncupative will requires to be proved by evidence more strict and stringent than that of a written one in every single particular.

"The testamentary capacity, and the *animus testandi*, at the time of the alleged nuncupation, must appear by the clearest and most indisputable testimony, and that the proof embodies the real testamentary intentions." Blackstone says, "The testamentary words must be spoken with an intent to bequeath; not any loose, idle discourse in his illness; for he must require the bystanders to bear witness of such his intention." The claim of counsel as stated cannot therefore be maintained.

It must be proved that the testator called upon some person present, at the time the testamentary words were spoken, to bear testimony to said disposition as his will. This is the language and the requirement of the statute. It is to be strictly construed.

The most liberal interpretation that can be made is, that the testator intended his declarations as his will, and that the witnesses so understood them, and that they are relied upon as the witnesses to hear and remember the words. Did Hiram H. Seever, in any form, by word or act, call upon any person present to bear witness that his declarations were his last will; that he so intended them, and that the persons present so understood them, and they were relied upon as witnesses to a will? Such claim cannot be made. If he desired anything, or expected any thing from any one present, it was that they should make his request known to the folks. Not that they were to bear witness to a testamentary bequest, but be the messengers of a request made by him to his folks whoever they might be, desiring them to give of his property $1,000. Redfield in his work says: "It must appear that all the requirements of the law have been fully complied with, such as the *rogatio testium*, or calling upon the witnesses to bear testimony of the act." Same, 2 Blackstone, 501. In Jarman on Wills, 238, is a note compiling the authorities; it is said "Nuncupative wills are not favorites of the law. It is desirable, therefore, that the *fac-*

*tum* of such a will should be strictly proved to conform to the legal requirements for such a will; testamentary capacity and the *animus testandi*, at the time of the alleged nuncupation, must be shown by the clearest and most indisputable testimony." In the same note further along he says: "It is indispensible to the validity of a nuncupative will that the testator should request those present to bear witness to his disposition that they are his last will; but this request need not be made in any particular form. It must, however, be made and understood."

In Hubbard v. Hubbard, 12 Barb., 148, the court say: "It seems always to have been regarded as essential to the validity of ordinary nuncupative wills, in the English ecclesiastical courts, as before intimated, that there should have been a distinct calling of the witnesses to take notice of the testator's declarations, *animus testandi*, with a view that the very words then uttered by him constitute his will."

Calling witnesses to the bedside of the testator, to hear his declarations to the person requested to prepare his will, will constitute a good nuncupative will, where the testator is unable to execute his contemplated will. Burch v. Stovall, 27 Miss., 725. In Gibson v. Gibson, Walker, 364, same state, it was held, that the person making the will must do it *animo testandi;* that is, must himself understand that he is making a will; and in Tennessee, where the two witnesses testified that the testator called upon them and said: "I wish to make a disposition of my effects," and then went on to declare the nuncupation, and the witnesses, though not called upon in the words of the statute, felt specially required to notice the factum of the will, and the deceased supposed himself to be performing the testamentary act, it was held to be a good nuncupative will. Barker v. Dodson, 4 Humph., 342.

In the case of Hubbard v. Hubbard, 4 Selden, 196, cited by counsel, the testator was asked what disposition he wished to make of his property. He said he wished his wife to have all his personal property, and at the same time requested Beckwith to settle his affairs and see to his business. The court puts stress on the fact that the testator and the persons present were all seamen, and were acquainted with the rights of mariners in regard to making their wills. They evidently understood it to be a will, and spoke of it as such.

It will be observed that there was not only a disposition of the property made, but an executor named. Clearly, from this, the *animus testandi* was established. In that case the statutory provision that some person present must be called upon to bear witness to the disposition as a will, was not a requisite.

Again, in 1 Redfield, 201, it is stated that, "where the words attempted to be set up as a nuncupative will, were drawn from the testator by the person whose interest it was to establish them as a will, and no witnesses were called upon by the testator to bear witness to his words, it was held not a good will," and "it seems to be regarded, in many of the American states, as indispensible that the testator should call upon witnesses to take notice of his declaration, in order to constitute a valid nuncupative will; and * * * when no proof was made of a request by the testator to the bystanders to bear witness that the words were his will,—it was held that a nuncupative will could not be established."

From all these authorities, and under our statute, in order to sustain the will of Hiram H. Seever, so far as any question is made in this contest, it must be proved and clearly established that the alleged testator intended, at the time he spoke the words imputed to him, to make a testamentary bequest, that is, a last will.

That he knew he could make such will, and that what he uttered was his will.

That some person present must have been called upon in some form, by word or act, to bear witness that the disposition of the property made was his last will.

That the witnesses so understood them. and that the witnesses were relied upon to hear and remember the words as his last will.

In the case at bar, the *animus testandi* is not established. It does not appear that the testator knew he could make such will, nor that he called upon any person present to bear witness that the disposition made was his will; nor does it appear that they understood it as such. Therefore, to sustain the verdict rendered in the case at bar would be to entirely ignore the rules so well established, and which are adopted as safeguards to protect estates from the frauds that can be perpetrated under the guise of nuncupative wills.

It is but proper to state, in view of the argument made, that if this verdict is not to be sustained, the court should have directed the verdict. That would do, if it were not that the statute makes the order of probate of the will *prima facie* evidence of the due attestation, execution and validity thereof; so that the case must necessarily be submitted to the jury.

We regret very much that we are compelled to again set aside the verdict. Of course we disagree with the able counsel who seek to sustain the will. We must, however, exercise our judgment, and determine the case under the law as we interpret it.

The verdict of the jury will, therefore, be set aside and a new trial granted.

All the judges concur.

Seney & Shaufelberger, for plaintiffs.

Noble & Adams, for defendant, Martha J. Wade.